EMMA JOHNSON, Respondent, *v.* THE CITY OF BUFFALO, Appellant.

Fourth Department, May 2, 1917.

**Municipal corporations — injury to pedestrian by slipping and falling upon icy sidewalk — evidence.**

In an action against a city to recover for personal injuries sustained on a certain date by slipping and falling upon ice upon a sidewalk, plaintiff's evidence tended to show that the ice at the place where she fell was from one to two inches in thickness, very hard, rough, uneven and that one

witness had slipped upon it four days before, and it had impressed others as being dangerous.   The defendant called no witnesses except the government weather observer and relied upon his record as showing that the icy condition was produced by alternate rain, snow, thawing and freezing on the two days preceding the accident.

*Held*, on all the evidence, that a judgment in favor of the plaintiff should be affirmed.

APPEAL by the defendant, The City of Buffalo, from a judgment of the County Court of Erie county in favor of the plaintiff, entered in the office of the clerk of said county on the 31st day of October, 1916, upon the verdict of a jury for $1,350, and also from an order entered in said clerk's office on the 13th day of November, 1916, denying defendant's motion for a new trial made upon the minutes.

*William S. Rann* [*Frank C. Westphal* of counsel], for the appellant.

*Jerome Squires* [*Ford White* of counsel], for the respondent.

PER CURIAM:

Plaintiff has recovered a verdict for personal injuries sustained at nine-thirty A. M., April 9, 1914, by slipping and falling upon ice upon a sidewalk.

There was evidence from which the jury could find that the icy condition claimed to be dangerous to pedestrians had existed at the place of the accident for at least two weeks.

The jury were instructed that plaintiff could not recover unless the ice on the sidewalk was so dangerous as to be likely to result in an injury to a person using the walk.   Also that it was an unusual condition and one that had existed for such a length of time that the city authorities ought to have known about it.   That by " unusual condition " was meant a condition not ordinarily and generally produced by the winter weather in the locality.   Also that the dangerous condition had existed prior to April seventh.

Plaintiff's evidence tended to show that the ice at the place where she fell was from one to two inches in thickness, very hard, rough and uneven.   One witness had slipped upon it four days before and it had impressed others as being dangerous.

No witnesses were called in behalf of the city, except the government weather observer, by whose records it appeared that on April fourth there was a heavy snow fall, and light snow on the fifth and sixth. On the seventh rain began at three-five P. M. and continued until after midnight — " a good heavy rainfall." Rain changed to snow at one A. M. on the eighth, and it continued to snow until twelve-fifty P. M., with a total fall of two and one-half inches. On the ninth it began snowing at eight-thirty-five A. M. and continued until some time after plaintiff's accident at nine-thirty A. M. It also appeared that the snow was four inches deep at eight A. M. on the fifth, but melted rapidly in the sunshine during the day. The snow that fell on the sixth melted upon reaching the ground. The observer's record also contained this note of conditions on the eighth: " At 8:00 A. M. the ground was covered with 1½ inches of moist snow. Another inch of snow fell between 8:00 A. M. and noon, covering the streets and sidewalk with a mixture of snow and water that made itself disagreeable for pedestrians and transportation."

The temperature on the seventh was above freezing (thirty-two degrees) after eight A. M. It was raining. On the eighth it alternated above and below freezing during the day until five P. M., when it began falling and reached twenty-three degrees at eleven P. M. and fell rapidly after that, and at six and seven o'clock on the morning of the ninth it was down to twenty degrees, and rose to twenty-four degrees between nine and ten o'clock.

Counsel for the city relies upon this record as showing that the icy condition on the morning of the ninth was produced by the alternate rain, snow, thawing and freezing on the seventh and eighth.

The jury were instructed that if such was the case they must find a verdict in defendant's favor. The jury has accepted as true the testimony of plaintiff's witnesses to the effect that hard ice of about the same thickness and rough and uneven condition had covered this walk at the place of the accident for at least two weeks prior to the accident. The city had no witnesses to the contrary, nor did it show that if such condition existed, it was usual in that part of the city at that time.

Under these circumstances, we think a recovery was permissible within the authorities. (See *Harrington* v. *City of Buffalo*, 121 N. Y. 147; *Williams* v. *City of New York*, 214 id. 259; *Gaffney* v. *City of New York*, 218 id. 225.)

We cannot say that the verdict is against the weight of the evidence, and we find no erroneous rulings at the trial which require a reversal.

The judgment and order appealed from should be affirmed, with costs.

All concurred.

Judgment and order affirmed, with costs.